UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LAVON PARKS,

                    Plaintiff,

         v.

                                                    1:24-cv-01019

DRUG ENFORCEMENT ADMINISTRATION,

                    Defendant.

---

**MEMORANDUM OF LAW ON BEHALF OF THE DRUG ENFORCEMENT
ADMINISTRATION IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

This case concerns a request made by Plaintiff Lavon Parks ("Parks") to the Drug
Enforcement Administration ("DEA"), which is a component of the United States
Department of Justice ("DOJ"), under the Freedom of Information Act ("FOIA"), 5 U.S.C.
§ 552.  This Memorandum of Law is submitted on behalf of the DEA in support of its motion
for summary judgment, pursuant to Fed. R. Civ. P. 56.

**SUMMARY OF FACTS AND PROCEDURAL HISTORY**

**A.      Administrative History of Parks' FOIA Request**

By electronic submission via DEA's Public Access Link ("PAL") received on July 11,
2024, Parks made a FOIA/PA request to DEA, seeking "all requests for information about
himself … made to DAS, Hemisphere, or any HIDTA including a copy of any written or
digital request and response; including, but not limited to, the source of the request, date,
content of request, and the person or position to which it was directed, and any electronic
trail from receipt to response."  Declaration of Angela C. Davis ("Davis Dec."), ¶ 5, Exhibit

A.  On July 11, 2024, an automatic reply was generated in response to Parks' request and transmitted to him via the DEA's PAL portal ("Portal"), acknowledging receipt of Parks' FOIA/PA request and notified that it had assigned his request DEA Case Number 24-00986-F.  Davis Dec., ¶ 6, Exhibit B.  On July 17, 2024, an automatic reply was generated and transmitted to Parks via the Portal, notifying Parks that it had changed his FOIA/PA Case Number from 24-00986-F to 24-00625-P and informed Parks to use that number in all future correspondences.  Davis Dec., ¶ 7, Exhibit C.

By correspondence dated July 22, 2024, and transmitted to Parks via the Portal, DEA notified Parks that it determined his request was deficient and not compliant with DOJ's FOIA regulations codified in 28 C.F.R. Part 16 Subpart A.  Davis Dec., ¶ 8, Exhibit D. Specifically, DEA advised Parks that because he was requesting records about himself, DEA would not process his request or search for responsive records without Parks' verification of identity pursuant to 28 C.F.R. § 16.41(d).  Davis Dec., ¶ 8, Exhibit D.  By e-mail dated August 28, 2024, Parks provided DEA with a completed and signed DOJ Certification of Identity Form (DOJ-361).  Davis Dec., ¶ 9, Exhibit E.

By letter dated September 6, 2024, DEA responded to Parks' July 11, 2024, request, denying his request pursuant to FOIA and Privacy Act Exemptions 6, 7(A), (C), (E), (F), and (j)(2), respectively.  Davis Dec., ¶ 10, Exhibit F.  By letter dated September 12, 2024, Parks appealed DEA's final determination to the Office of Information Policy (OIP).  Davis Dec., ¶ 11, Exhibit G.

On October 22, 2024, Parks filed the Complaint in the instant action while his appeal was pending with OIP.  ECF. No. 1.  By letter dated November 15, 2024, the OIP informed

2

Parks that it was closing his appeal file because he had filed a lawsuit in the federal court concerning DEA's determination of his FOIA/PA request.  Davis Dec., ¶ 13, Exhibit H.

**B.      DEA's Law Enforcement Mission and Investigative Records**

DEA's law enforcement mission includes enforcing the controlled substance laws and regulations of the United States. DEA's investigative jurisdiction derives from the Controlled Substances Act, 21 U.S.C. § 801, et seq. ("the CSA" or "the Act"). Davis Dec., ¶ 14.  The CSA authorizes DEA to enforce the Act through the investigation of trafficking in controlled substances and the violators who operate at interstate and international levels.  Davis Dec., ¶ 14.   This mission involves conducting criminal investigations to assist prosecutions of organizations and principal members of organizations involved in the growing, manufacture, or distribution of controlled substances appearing in or destined for illicit traffic in the United States. Davis Dec., ¶ 14.  DEA also prevents, detects, and investigates the diversion of controlled pharmaceuticals and listed chemicals from legitimate sources while ensuring an adequate and uninterrupted supply for legitimate medical, commercial, and scientific needs. Davis Dec., ¶ 14.

Pursuant to its law enforcement mission, all DEA criminal law enforcement investigative records are maintained as part of the DEA Investigative Reporting and Filing System (IRFS). IRFS is a DEA Privacy Act System of Records (Justice/DEA-008) that accounts for all administrative, general, and criminal investigative records compiled by DEA for law enforcement purposes across all DEA offices worldwide, including records maintained at DEA field offices. Davis Dec., ¶ 15.  This includes any records related to an individual's involvement in, or association with, a DEA intelligence operation, or civil, criminal, or regulatory investigation.  Davis Dec., ¶ 15.

DEA locates records that are maintained as part of IRFS using the DEA Narcotics and Dangerous Drugs Information System (NADDIS). Davis Dec., ¶ 16.  NADDIS is a centralized electronic data index system that captures discrete data points about a person or entity collected during a DEA investigation and maintained as part of a DEA record. Davis Dec., ¶ 16.  Utilizing NADDIS to conduct an initial query as to whether investigative records exist as part of IRFS is the practical means by which DEA identifies, and then locates, investigative records across any DEA office worldwide. Davis Dec., ¶ 16.  A NADDIS search is a worldwide, comprehensive search because all DEA intelligence and investigative records are indexed into NADDIS for purposes of being maintained as part of IRFS.  Davis Dec., ¶ 16.

**C.      Search for Records Responsive to Parks' FOIA/PA Request**

DEA interpreted Parks' July 11, 2024, FOIA/PA request to be a request for any investigative records pertaining to himself.  Davis Dec., ¶ 17.  To locate all responsive records, DEA searched IRFS for investigative records about Parks by querying NADDIS using Parks' name. Davis Dec., ¶ 18.  The NADDIS search located four investigations involving Parks. Davis Dec., ¶ 18.  Three DEA field offices currently have active investigations involving Parks.  Davis Dec., ¶ 18.  The fourth and remaining investigation in NADDIS is noted as "closed," but as described in further detail below, remains relevant to the currently active investigations and will be relevant to any future enforcement proceedings.  Davis Dec., ¶ 18.

The FOIA/PA Unit contacted the appropriate DEA field offices to conduct records searches for records, including emails and other communications, related to the NADDIS matters involving Mr. Parks. Davis Dec., ¶ 19.  These searches relied on the relevant case file numbers identified in NADDIS to identify responsive records.  Davis Dec., ¶ 19.  Due to the

4

nature of the active investigations into Parks, all records involving Parks, including emails and other communications would be maintained in investigative case files in NADDIS. Davis Dec., ¶ 20.  DEA's searches identified the systems and search terms that were reasonably likely to uncover all records responsive to Parks' FOIA/PA request.  Davis Dec., ¶ 21. DEA's search is discussed further in its *in camera* declaration.  Davis Dec., ¶ 21.

**D.      Procedural History**

Parks commenced this action on October 22, 2024.  ECF No. 1.  DEA answered the complaint on November 26, 2024.  ECF No. 6.

On March 21, 2025, DEA moved to bifurcate briefing on its summary judgment motion.  ECF. No. 13, 14.  Specifically, DEA argued that FOIA Exemption 7(A) will be dispositive of this case and, thus, briefing of other applicable FOIA exemptions would be unnecessary and inefficient.  Id.  The Court granted that motion on May 2, 2025.  ECF No. 18.  DEA's motion for summary judgment on FOIA Exemption 7(A) is due by July 31, 2025.  ECF No. 21.

<u>ARGUMENT</u>

<u>General Principles of FOIA Law and Standard of Review</u>

FOIA generally requires disclosure of government records unless the requested information falls within an enumerated FOIA exemption.  5 U.S.C. § 552(b). Congress enacted FOIA to "facilitate public access to Government documents." U.S. Dep't of State v. Ray, 502 U.S. 164, 173 (1991). "FOIA was enacted to promote honest and open government and to assure the existence of an informed citizenry to hold the governors accountable to the governed." Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 478 (2d Cir. 1999) (citations and internal quotation marks omitted). "FOIA is premised on 'a policy strongly favoring

5

public disclosure of information in the possession of federal agencies.'" Jabar v. U.S. Dep't of Just., 62 F.4th 44, 49 (2d Cir. 2023) (quoting Halpern v. Fed. Bureau of Investigation, 181 F.3d 279, 286 (2d Cir. 1999)).

"The statute requires that agencies search for and promptly make available records in response to requests that reasonably describe the records sought." Jabar, 62 F.4th at 49 (citing 5 U.S.C. § 552(a)(3)). Therefore, "[a]gencies are required to disclose requested documents unless they fall within an enumerated exemption." Knight First Amend. Inst. at Columbia Univ. v. U.S. Citizenship & Immigr. Servs., 30 F.4th 318, 327 (2d Cir. 2022). "FOIA authorizes courts 'to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.'" Jabar, 62 F.4th at 49 (quoting 5 U.S.C. § 552(a)(4)(B)).

"In recognition of those interests that may at times conflict with this policy of full disclosure, FOIA also provides nine exemptions from its disclosure requirement …." Halpern, 181 F.3d at 287. Notwithstanding the FOIA's "liberal congressional purpose," the statutory exemptions must be given "meaningful reach and application." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989). "Requiring an agency to disclose exempt information is not authorized." Minier v. CIA, 88 F.3d 796, 803 (9th Cir. 1996) (quoting Spurlock v. FBI, 69 F.3d 1010, 1016 (9th Cir. 1995)).

"As noted by the Supreme Court, under FOIA, 'federal jurisdiction is dependent on a showing that an agency has (1) 'improperly' (2) 'withheld' (3) 'agency records.'" Grand Cent. Partnership, Inc., 166 F.3d at 478 (quoting U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142 (1989) and Kissinger v. Reporters Comm. for Freedom of Press, 445 U.S. 136, 150 (1980)). "Only when each of these criteria is met may a district court 'force an agency to

6

comply with the FOIA's disclosure requirements.'" Grand Cent. Partnership, Inc., 166 F.3d at 478 (quoting Tax Analysts, 492 U.S. at 142).

"Federal courts are required to conduct *de novo* review of an agency's decision to withhold requested records under the FOIA." Kuzma v. U.S. Dep't of Justice, No. 12-CV-807S, 2014 WL 4829315, at *2 (W.D.N.Y. Sept. 29, 2014) (citing Massey v. FBI, 3 F.3d 620, 622 (2d Cir. 1993)). "The preferred method of doing so is by summary judgment." Kuzma, 2014 WL 4829315, at * 2 (citing Fox News Network, LLC v. U.S. Dep't of the Treasury, 739 F. Supp. 2d 515, 532 (S.D.N.Y. 2010); Jones-Edwards v. Appeal Bd. of NSA, 352 F. Supp. 2d 420, 423 (S.D.N.Y. 2005)). "In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA." Carney v. U.S. Dep't of Just., 19 F.3d 807, 812 (2d Cir. 1994). Federal agency affidavits in FOIA cases are "accorded a presumption of good faith." Id. (citations and internal quotation marks omitted). "The primary question presented in this case—the usual question raised in FOIA litigation— is whether the information withheld properly falls within the scope of the exemptions." Halpern, 181 F.3d at 287.

### POINT I

### DEA IS ENTITLED TO SUMMARY JUDGMENT AS ITS SEARCH WAS ADEQUATE

A.    **Governing Law**

In response to FOIA requests, federal agencies are obligated to conduct searches that are reasonably calculated to locate all responsive records. Weisberg v. U.S. Dep't of Justice, 705 F.2d 1344, 1351 (D.C. Cir. 1983) ("Weisberg I"); Kennedy v. U.S. Department of Justice, 03-CV-6077, 2004 WL 2284691, at *2 (W.D.N.Y. 2004); Pub. Investors Arbitration Bar Ass'n

7

v. U.S. Sec. & Exch. Comm'n, No. 11-2285, 2013 WL 987769 at *4 (D.D.C. Mar. 14, 2013). Under this reasonableness standard, an agency does not need to search every record system. Oglesby v. U.S. Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990) ("There is no requirement that an agency search every record system."). Nor is the adequacy of a search judged by its results. Iturralde v. Comptroller of the Currency, 315 F.3d 311, 315 (D.C. Cir. 2003) ("[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search."); Meeropol v. Meese, 790 F.2d 942, 952-53 (D.C. Cir. 1986) ("[A] search is not unreasonable simply because it fails to produce all relevant material[.]"); Mobley v. CIA, 924 F.Supp.2d 24, 36 (D.D.C. 2013). Rather, an agency's search is measured against a standard of reasonableness applied to the specific FOIA request, i.e., did the agency search all places where responsive records were reasonably likely to be found. Weisberg v. U.S. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984) ("Weisberg II"); Scaff-Martinez v. DEA, 770 F. Supp. 2d 17, 21-22 (D.D.C. 2011). Accordingly, an agency's "failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for the requested records." Wilbur v. CIA, 355 F.3d 675, 678 (D.C. Cir. 2004) (per curiam).

To justify its search for purposes of summary judgment, an agency needs only to provide affidavits explaining the scope and method of the search in reasonable detail. Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982) ("[A]ffidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA."). Those agency affidavits are entitled to a presumption of good faith. SafeCard Servs., Inc., v. Sec. Exch. Comm'n, 926 F.2d 1197,

1200 (D.C. Cir. 1991); Mobley, 2013 WL 452932 at *33 ("The only situation in which the Court would withhold a presumption of good faith as to a sworn agency declaration is if the plaintiffs were able to present contrary evidence of bad faith.").  Once the agency has shown "that it conducted 'reasonably calculated' searches, the burden is on [plaintiff] to identify specific additional places the agency should now search."  Hodge v. FBI, 703 F.3d 575, 580 (D.C. Cir. 2013).  In short, where affidavits establish that an agency's FOIA search was reasonably calculated to find all responsive records, the agency has satisfied its obligation to conduct an adequate search.  Perry, 684 F.2d at 127; Cooper v. Stewart, 763 F. Supp. 2d 137, 141-42 (D.D.C. 2011), aff'd, 2011 WL 6758484 (D.C.Cir. Dec 15, 2011); see also Fed. R. Civ. P. 56(c).

**B.    Discussion**

As stated in the accompanying Davis Declaration, DEA's search for responsive records was comprehensive, reasonably calculated to locate responsive documents, and did, in fact, locate responsive records.  Davis Dec. ¶ 21.  Therefore, DEA is entitled to summary judgment with respect to the adequacy of its search.

<u>POINT II</u>

**ALL RECORDS REQUESTED BY PARKS ARE EXEMPT FROM RELEASE UNDER FOIA EXEMPTION 7(A)**

**A.    Governing Law**

FOIA Exemption 7 exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... (A) could reasonably be expected to interfere with enforcement proceedings …."  5 U.S.C. § 552(b)(7)(A); Kuzma v. U.S. Dep't of Just., 692 F. App'x 30, 35 (2d Cir. 2017) (summary order).  "The purpose of this exemption is to prevent harm to the

9

government's case in court by not allowing litigants earlier or greater access to agency investigatory files than they would otherwise have." Cui v. Fed. Bureau of Investigation, 551 F. Supp. 3d 4, 19 (E.D.N.Y. 2021) (quoting N.Y. Times Co. v. U.S. Dep't of Just., 390 F. Supp. 3d 499, 512–13 (S.D.N.Y. 2019) and N.Y. Times Co. v. U.S. Dep't of Just., No. 14-CV-3776, 2016 WL 5946711, at *7 (S.D.N.Y. Aug. 18, 2016)) (internal quotation marks omitted).  "In enacting this exemption, 'Congress recognized that law enforcement agencies had legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations.'" Ctr. for Nat. Sec. Studies v. U.S. Dept. of Justice, 331 F.3d 918, 926 (D.C. Cir. 2003) (quoting N.L.R.B. v. Robbins Tire & Rubber Co., 437 U.S. 214, 232 (1978)). "Exemption 7(A) is designed to allow law enforcement agencies to avoid premature disclosure of their evidence. It is a wide-ranging exemption that is intended to protect not only evidence contained in a record, but also its intended use in enforcement proceedings." Agrama v. Internal Revenue Serv., 282 F. Supp. 3d 264, 274 (D.D.C. 2017), aff'd, 17-5270, 2019 WL 2064505 (D.C. Cir. Apr. 19, 2019).

Initially, the agency must show "that the requested records were compiled for law enforcement purposes." Local 32B-32J, Serv. Employees Int'l Union, AFL-CIO v. Gen. Servs. Admin., 1998 WL 726000, at *7 (S.D.N.Y. Oct. 15, 1998).  If that threshold is met, then "[t]he agency must show '(1) a law enforcement proceeding is pending or prospective and (2) release of the information could reasonably be expected to cause some articulable harm.'" Cui, 551 F.Supp.3d at 19 (quoting Robbins Geller Rudman & Dowd LLP v. U.S. Sec. & Exch. Comm'n, 419 F. Supp. 3d 523, 530–31 (E.D.N.Y. 2019) and N.Y. Times Co., 390 F. Supp. 3d at 512–13). "The agency need not justify the withholding of each document with specific facts, but rather allow the court to be able to 'trace a rational link between the

10

nature of the document and the alleged likely interference.' " <u>Cui</u>, 551 F.Supp.3d at 19 (quoting <u>Robbins Geller Rudman & Dowd LLP</u>, 419 F. Supp. 3d at 530–31, and <u>N.Y. Times Co.</u>, 2016 WL 5946711, at *7).  "[I]f the exemption applies, it will justify denial of release, not only to the objects of the investigation and any pending or prospective enforcement actions, but to third parties as well." <u>Stein v. U.S. Sec. & Exch. Comm'n</u>, 266 F.Supp.3d 326, 346 (D.D.C. 2017) (citation and internal quotation marks omitted).

B.      **Discussion**

Regarding the initial threshold of FOIA Exemption 7(A) – that the requested records were compiled for law enforcement purposes -- that threshold is easily satisfied as the DEA, a federal agency charged with, among other things, enforcing the controlled substance laws and regulations of the United States, Davis Dec., ¶ 14, compiled records concerning Parks during the course of multiple criminal investigations.  Davis Dec., ¶¶ 18, 20.

Concerning the next two elements of FOIA Exemption 7(A) – that (i) a law enforcement proceeding is pending or prospective and (ii) the release of the information could reasonably be expected to cause some articulable harm – DEA has easily satisfied these prongs as well as stated in detail in the papers submitted to the Court for *in camera* review.[1]

---

[1] Alternatively, if this Court has any concern that the declarations, including the *in camera* materials, that DEA has provided are insufficiently detailed to allow it to find that Exemption 7(A) properly applies to any withheld documents, then it should afford DEA an opportunity to submit more detailed declarations before holding that the exemption does not apply. See e.g., <u>People for Ethical Treatment of Animals, Inc. v. Bureau of Indian Affairs</u>, 800 F. Supp. 2d 173, 178 n.2 (D.D.C. 2011) ("[I]n a FOIA case, even if defendant had failed in obtaining summary judgment because of an inadequate search, it does not necessarily follow that plaintiff prevails. Rather, the usual remedy is for the Court to remand to the agency to expand its search or to provide more detailed declarations regarding the scope of the search.") (collecting authority); <u>Nat'l Air Traffic Controllers Ass'n v. F.A.A.</u>, 2007 WL 495798, at *4 (D.D.C. Feb. 12, 2007) ("[B]ecause the agency has not met its burden of justifying the withholding… [a]s a remedy , the Court orders the FAA to submit a more detailed explanation of the competitive harm to Crown Consulting, or some other sufficient justification, that supports the redactions in documents 1-5 under FOIA Exemption 4."); <u>Citizens For Responsibility & Ethics in Washington v. Nat'l Archives & Records Admin.</u>, 583 F. Supp. 2d 146, 169 (D.D.C. 2008) (denying defendant's motion in part without prejudice and requiring it to provide "a supplemental submission with a more detailed explanation in support of its withholding" certain documents).  Also, if the Court finds FOIA Exemption 7(A) inapplicable, DEA requests the opportunity to make a motion for summary judgment concerning the remaining exemptions that are applicable to the requested documents.

## CONCLUSION

Defendant's motion for summary judgment should be granted and Plaintiff's complaint should be dismissed in its entirety with prejudice.

DATED:  Buffalo, New York, July 25, 2025

MICHAEL DIGIACOMO
United States Attorney


BY:    s/MICHAEL S. CERRONE
Assistant U.S. Attorney
U.S. Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
716-843-5851
michael.cerrone@usdoj.gov