**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| LAVON PARKS,<br><br>Plaintiff,<br><br>v.<br><br>DRUG ENFORCEMENT ADMINISTRATION,<br><br>Defendant. | ) | Civil Action No. 24-cv-01019-LJV |

**SUPPLEMENTAL DECLARATION OF ANGELA C. DAVIS**

I, Angela C. Davis, hereby make the following declaration under penalty of perjury pursuant to 28 U.S.C. § 1746.

1. I am currently the Unit Chief of the Freedom of Information/Privacy Act Unit ("FOIA/PA Unit") of the United States Department of Justice ("DOJ"), Drug Enforcement Administration ("DEA"), located at DEA's Headquarters in Arlington, Virginia. I have served in this capacity since July 2024. Previously, I served as a Supervisory Government Information Specialist at another federal agency from April 2020 to July 2024, where I served as the first-line supervisor for all FOIA Specialists, administrative professionals, and other personnel within the FOIA Office, and oversaw the lifecycle of each FOIA request directed at the agency.

2. As part of my duties at DEA, I oversee the processing of certain requests under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act ("PA"), 5 U.S.C. § 552a (cited together as "FOIA/PA"). Due to my experience and the nature of my position, I am

familiar with the policies and practices of DEA related to the searching, processing, and disclosure of DEA information pursuant to the FOIA/PA.

3. In preparing this declaration, I have read and am familiar with the Complaint in the above titled action, as well as Plaintiff's Cross Motion for Summary Judgment, Memorandum of Law in Support of Cross Motion, and Opposition to Defendant's Motion for Summary Judgment (ECF No. 1, "Complaint;" ECF No. 27, "Plaintiff's Response").

4. I file this declaration in support of DEA's reply to Plaintiff's Response and to provide the Court clarification regarding the facts disputed in Plaintiff's Response.

5. The statements set forth herein are true and correct to the best of my belief and based on my personal knowledge as well as the information provided to me in the course of performing my official duties.

**Explanation of DEA's Statements Disputed**

Statement of Fact # 8:

6. Plaintiff asserts that DEA failed to comply with FOIA's statutory time limits by not adjudicating or responding to Plaintiff's administrative appeal. (ECF No. 27-1, p.3, ¶ 8). Plaintiff confuses DEA's responsibilities with the role of the DOJ's Office of Information Policy (OIP) and misunderstands the appeal process. DEA does not adjudicate FOIA appeals. Under DOJ regulations, that function is performed exclusively by the OIP. *See* 28 C.F.R. 16.

7. DEA denied Plaintiff's request in its final determination dated September 24, 2024, (Davis Dec., ¶ 10, Exhibit F), which Plaintiff administratively appealed to OIP on September 12, 2024. (Davis Dec., ¶ 11, Exhibit G). DEA therefore had no authority or responsibility to issue an appellate decision, and any timing or adjudication of Plaintiff's appeal rests solely with OIP.

Statement of fact # 13:

8. Plaintiff contends that DEA incorrectly and unreasonably interpreted the scope of Plaintiff's FOIA request. First, Plaintiff argues that the request had a limited scope (4-month period). Second, Plaintiff argues that DEA was wrong by interpreting the request as seeking "'any' investigative records pertaining to himself" when Plaintiff's request specifically sought only records that "were made to DAS, Hemisphere, or any HIDTA." (ECF No. 27-1, p.5, ¶ 13).

9. This argument overlooks that the narrower date range (4-month) was generated from information entered into the Public Access Link (PAL) form's summary field, while Plaintiff's attached written request—the full and operative version of the request—contained no date limitations at all. (Exhibit 1).[1] Because the attachment represents the requester's complete and final statement of the request, DEA reasonably relied on the attachment when determining the scope. It is a standard practice to treat the requester's full written statements attached to the PAL account as controlling over the information provided in PAL.[2]

10. Nevertheless, FOIA demands only a reasonable but not a perfect search. FOIA requires DEA to conduct a search that is "reasonably calculated to uncover all relevant documents.[3]" DEA reasonably interpreted the request to cover all records relevant to Plaintiff without limiting the timeframe. DEA's more thorough and inclusive search provided greater

[1] Exhibit 1 here consist of two (2) combined documents, both of which constitute Plaintiff's official FOIA request to DEA dated July 11, 2024. In my earlier Declaration, I submitted them separately to avoid duplicates. The first page of this exhibit I submitted as a proof of Plaintiff's FOIA submission to DEA. ((Devis Dec. Ex. A). Page 2 of this exhibit was included in Exhibit G, which I submitted as a proof of Plaintiff's OIP appeal. (Davis Dec. Ex. G, at 6).
[2] Only when the PAL account contains no attachments, DEA will treat the information provided in PAL as controlling.
[3] *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)

assurance that no responsive records are overlooked. The broader search therefore enhanced, rather than diminished the adequacy of DEA's efforts.

<u>Statement of Facts # 14</u>:

11. Plaintiff's allegation that DEA failed to search the appropriate databases rests on a misunderstanding of the DEA's record keeping systems. Plaintiff argues that DEA failed to "search databases associated with DAS, Hemisphere or HIDTA for responsive records." (ECF No. 27-1, p.5-6, ¶ 14). According to Plaintiff's own description, Data Analytical Services (DAS)[4] is a database owned and maintained by AT&T, not by DEA.[5]

12. DAS, a telephone record collection program, is a service available to High Intensity Drug Trafficking Areas (HIDTA) initiatives (task forces) through a contractual agreement with a telecommunications provider (Provider A). Under this agreement, Provider A allows law enforcement personnel at the local, state, and federal levels to access phone records of Provider A's customers, as well as anyone else whose communication is routed through Provider A's switch. It furnishes these law enforcement agencies with information and technical assistance to precisely and accurately identify telephone numbers linked to illegal drug trafficking and related crimes.

13. The HIDTA program, in turn, is a grant program created by Congress with the Anti-Drug Abuse Act of 1988 and administered by the Office of National Drug Control Policy (ONDCP), a component of the Executive Office of the President. The HIDTA program was

---

[4] Formerly known as "Hemisphere Project" (from 2009 to 2013).
[5] "Through the Hemisphere program, AT&T was paid to make all of this data accessible to law enforcement." (ECF. No. 27-2, p.16) "Federal and state law enforcement investigators submit administrative subpoenas to a HIDTA point of contact requesting call detail records from the Hemisphere database which are associated with a specific target and/or phone number(s)." (ECF. No. 1, ¶ 34).

created to reduce drug trafficking in areas determined to be critical drug-trafficking regions of the United States. There are currently 33 HIDTAs. The DEA plays an active role in it, with 1,500 authorized special agent positions dedicated to the program. At the local level, the HIDTAs are directed and guided by Executive Boards composed of an equal number of regional Federal and non-Federal (state, local, and tribal) law enforcement leaders.[6]

14. Although DEA participates as a member of the HIDTA Executive Boards, it does not operate, manage, or administer the HIDTA program. HIDTA program activities, including the creation, maintenance, and storage of HIDTA records, are handled by the HIDTA Executive Board and the designated HIDTA program office. Accordingly, DEA does not create, possess, maintain, or control HIDTA program records, nor does it store such records in any of its systems of records. Since DEA has no custody or control of HIDTA records, no HIDTA records responsive to Plaintiff's request exist within DEA.

15. As one of many participants in the HIDTA program, DEA, among other agencies, is a customer of DAS products,[7] utilizing them in its time-sensitive, ongoing investigations. The database that DAS uses to generate those products is created, maintained, and controlled by Provider A. Only the products generated in response to DEA's requests become part of DEA records, subject to FOIA requests.

16. DEA searched all databases that could reasonably contain responsive records because FOIA applies only to "agency records" that DEA creates, obtains, and controls. DEA thus has no obligation to search for or produce materials from a privately owned database. To the extent

---

[6] https://www.dea.gov/operations/hidta

[7] DAS generates two (2) types of products for law enforcement agencies upon the request—basic and advanced—both of which are generated by using phone records collected and stored by Provider A.

DEA has obtained DAS-generated reports, those records would be contained in the investigative case files contained in the subject's NADDIS report. As already explained, IRFS accounts for all administrative, general, and criminal investigative records compiled by DEA for law enforcement purposes across all DEA offices, domestic or international, that would include any DAS-generated report obtained through administrative subpoenas. (Devis. Dec. ¶ 15). Thus, by searching IRFS for records pertaining to Plaintiff, DEA conducted a comprehensive search of Plaintiff's records that would include DAS-generated reports.

Statement of Facts # 17:

17. Plaintiff challenges the adequacy of DEA's search on the incorrect assumption that the agency misinterpreted Plaintiff's FOIA request. (ECF No. 27-1, p.6, ¶ 17). Plaintiff's arguments regarding DEA's search are mutually contradicting. First, Plaintiff faults DEA for construing the FOIA request broadly, (ECF No. 27-1, p.5, ¶ 13), while simultaneously claiming the search was insufficiently comprehensive.[8] As already explained above, DEA properly interpreted Plaintiff's FOIA request and conducted a search that was reasonably calculated to locate all records responsive to the request.

Statement of Facts # 18:

18. Plaintiff's argument overlooks that greater detail about how disclosure would interfere with law enforcement proceedings would itself reveal sensitive investigative methods. DEA has provided the maximum level of detail permissible in its *In Camera* declaration. Elaborating further in a public declaration on the specific harm that would result from the

---

[8] To the extent Plaintiff's claim for inadequate agency search is also based on the misunderstanding that DEA failed to search AT&T database, I have already explained above that FOIA obligates DEA to search only its own records. Moreover, DEA's search was broad enough to cover any information obtained from AT&T, if any.

disclosure would reveal the very information Exemption 7(A) is designed to protect.[9] The explanation provided is therefore adequate and consistent with FOIA case law.

**Segregation of Non-Exempt Information**

19. Every effort is made to release all segregable information without disclosing material that would interfere with an ongoing law enforcement proceeding. DEA reviewed the responsive records and organized them into the categories described above. Because each category consists of records whose disclosure, in whole or in part, would foreseeably interfere with the ongoing law enforcement proceedings, no additional non-exempt information can be reasonably segregated and released.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

ANGELA DAVIS Digitally signed by ANGELA DAVIS Date: 2025.12.11 11:09:48 -05'00'

____________________
DATE

Angela C. Davis
Unit Chief
Freedom of Information & Privacy Act Unit
Drug Enforcement Administration

[9] Two of the three active cases cover the 4-month timeframe requested by Plaintiff.